On Rehearing
MOISE, Justice
(dissenting).
The question now posed is: Can the City of New Orleans levy an ad valorem tax on personal property actually installed and used by the Government in locations owned or leased by it, when the State of Louisiana, through its Legislature, has ceded exclusive jurisdiction?
The District Court and the Supreme Court of Louisiana answered this question in the negative.
A rehearing was applied for in the Supreme Court and granted, and on rehearing the original opinion was reversed.
Precedent and authority supports the contentions of the plaintiff:
1. The Constitution of the United States, Article I, § 8, Clause 17.[1]
*705 2. Act 31 of the Louisiana Legislature for the year 1942, amending Act 12 of 1892.[2]
3. An unreversed decision of the United States Supreme Court — the Surplus Trading Company v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091.[3] This decision is as reliable as the attraction of gravity; there is no shadow of turning.
4. An opinion from the Office of the Attorney General of Louisiana, whose views expressed are persuasive.
5. The reasonableness of the position taken by reason of the natural law that the creature cannot be Lord of its creator. The word, “reasonableness”, is used in a sense that from the calm sea level of common sense applied to the whole situation of the law and the facts is not illegitimate to the views herein expressed.
We must remember that the United States is a Government, whose authority extends over the whole territory of the Nation, acting upon all of the States and all of the people of the States.
• The International Business Machines Corporation, who is the owner of the leased installations, does not sell these appliances. This was the only property owned by them in this jurisdiction. The modus operandi in such cases is for the City to seize the personal property (the installations made in the Government buildings) and sell it at public auction, the proceeds of which is *707 used to satisfy the tax levied. In order to prevent such an unusual situation and in order not to stop the actual using by the Government of the property in these utilities, the International Business Machines Corporation paid the amount under protest, reserving the sacred right to obtain remedy or redress through the Courts.
In opposition, the City has cited license tax cases, gross receipt tax cases, and miscellaneous unrelated cases.
The twistifications, the dexterity of the City to reconcile the law, and even the opinion on rehearing, hold that the Surplus Trading Company, supra, does not apply because of the facts. The Surplus Trading Company case was a suit by the Sheriff and Collector of Taxes of Pulaski County, Arkansas, tt> enforce payment by the Surplus Trading Company of state and local taxes on certain personal property owned by it. The Company resisted payment of the taxes, on the ground that the property on which the assessment was laid was located within Camp Pike, an army mobilization, training and supply station of the United States located on land purchased by the United States with the consent of the Legislature of Arkansas. The property attempted to be taxed consisted of a large quantity of woolen blankets which the defendant, a New York concern, purchased from the United States at an advertised sale a few days before the day fixed by the state law for listing personal property for taxation, and which in much the greater part was on that day in the army storehouses within Camp Pike awaiting shipment therefrom. •
In the Surplus Trading Company case, supra, the Court held that private personal property located within an army camp, the lands for which were acquired by the United States with the consent of the legislature of the state in which such lands are situated, cannot be subjected to state taxation, in view of the provisions of Article I, § 8, Clause 17, of the Constitution, giving Congress exclusive legislative authority over places so acquired.
In the Surplus Trading Company case, supra, only one utility was involved — Camp Pike. In the instant case, there are six utilities of equal dignity and importance as Camp Pike.
In the case of Surplus Trading Company, supra, the blankets stored were not used by the Government for its public purposes. They had been sold, but a part of them was stored in the Government storehouses. In the instant case, the property has been leased and installed in all of the six locations, and are in actual use by the Government for its public purposes.
It is urged that the fact that these facilities located here in New Orleans, Louisiana, use water, sewerage and drainage, and avail themselves of police protection, is indicative of the fact that the Government was not assuming jurisdiction in this *709 respect. In cases on this subject, where the Government put in its own services of water, sewerage and drainage, etc., the utilities were far removed from big cities. We -cannot condemn the Government for using these services on the payment of a small fee.
The case of Offutt Housing Company v. County of Sarpy, 160 Neb. 320, 70 N.W.2d 382, affirmed 76 S.Ct. 814, is easily distinguishable, because there it was stipulated in the agreement that the Government gave the State the right to tax. Such is not the facts in the instant case.
We submit that on grounds of judicial comity the Court always bows to its own decisions.
I respectfully dissent.

. “The Congress shall have Power * * To exercise exclusive Legislation in all Cases whatsoever-, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, doek-Yards, and other needful Buildings.”

. “Section 1. Be it enacted by the Legislature of Louisiana, That the consent of the State of Louisiana is hereby given, in accordance with the seventeenth clause, eighth section, of the first article of the Constitution of the United States, to the acquisition by the United States, by purchase, condemnation or otherwise, of any land in this State required for sites for forts, magazines, arsenals, dockyards, and other needful buildings, or for any other purposes of the Government of the United States.
“Section 2. That the United States may enter upon and occupy any land in the State of Louisiana which it has heretofore acquired, or may hereafter acquire, by purchase, condemnation, lease or otherwise, required for sites for forts, magazines, arsenals, dockyards, and other needful buildings, or for any other purposes of the Government of the United States, and shall have the right of exclusive jurisdiction over the property so acquired, during the time that the United States shall be or remain the owner or lessee thereof, for all purposes, except that the State retains the right to serve therein all civil and criminal process issuing under authority of the said State, and all lands so held and title to which is vested in the United States shall be and remain exempt from all state, parochial, municipal or other taxation, assessment or other charges which may be levied or imposed by or under authority of this State.”

: In the Cook case the Court held that private personal property located within an Army Camp, the lands for which were required by the United States with the consent of the Legislature of the state in which such lands are situated, could not be subjected to state taxation in view of the provisions of Article 1, § 8, Clause 17 of the Constitution giving Congress exclusive legislative authority over the places so acquired.